SHAWN N. ANDERSON
United States Attorney
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7334

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 23-00001 |
| Plaintiff, | |
| vs. | **UNITED STATES' SENTENCING MEMORANDUM** |
| MELVIN JOHN SALAS NAPUTI, | |
| Defendant. | |

COMES NOW, the United States of America ("Government"), by and through the undersigned Assistant U.S. Attorney Rosetta L. San Nicolas, and hereby files this Sentencing Memorandum. The Government recommends that the Court impose a sentence of 360 months, the low end of the guidelines, for the offenses of Attempted Possession with Intent to Distribute Fifty or More Grams of Methamphetamine and Felon in Possession of Firearm and Ammunition.

## I.   STATEMENT OF FACTS

Defendant MELVIN JOHN SALAS NAPUTI entered into a plea of guilty to two (2) offenses, Count 3: Attempted Possession with Intent to Distribute Fifty or More Grams of Methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2 and Count 5: Felon in Possession of Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1).

U.S. SENTENCING
MEMORANDUM                                    1

### a. Prior Convictions

Defendant MELVIN JOHN SALAS NAPUTI has two prior federal convictions.

On August 12, 2011, MELVIN JOHN SALAS NAPUTI entered into a plea of guilty and was sentenced in Criminal Case No. 1:10-CR-000068-001, Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). This is a felony conviction is punishable by a term of imprisonment exceeding one (1) year.

On August 12, 2011, MELVIN JOHN SALAS NAPUTI entered into a plea of guilty and was sentenced in Criminal Case No. 1:10-CR-000076, Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii), this conviction is for an offense for which a maximum term of imprisonment of ten years or more is prescribed by law.

The District Court ordered that he not possess any firearms or ammunition.

### b. Discovery of .45 Caliber Firearm at the Oceanview Residence Hotel

On August 8, 2018, U.S. Marshals executed a federal arrest warrant for MELVIN JOHN SALAS NAPUTI ("NAPUTI") at Room #400 Oceanview Residence Hotel in Tumon, Guam. NAPUTI was with his girlfriend M.C. A safety sweep of the hotel room located drug paraphernalia on top of a room safe in plain sight. The Defendant's girlfriend admitted that there were both illegal drugs and a firearm in the hotel room. M.C. consented to a search.

Law enforcement found 15 grams of methamphetamine (99% purity) in an ice bucket. They found cocaine, drug packaging material and drug paraphernalia. They located a firearm, a Kimber, model Ultra Carry II, .45 ACP caliber pistol, two (2) magazines, 22 assorted rounds of .45 caliber ammunition and $7,405.00, the illegal proceeds from the sale of illicit drugs. The Defendant's girlfriend said that the firearm was NAPUTI's and that he typically carried the firearm in his backpack. The firearm was not registered to the Defendant.

The Defendant's girlfriend M.C. had d-methamphetamine hydrochloride and cocaine in her purse. The total amount of d-methamphetamine found in the hotel room weighed 19.59 grams.

Defendant's girlfriend stated that NAPUTI used her pouches to store and carry his drugs. She stated NAPUTI used her cell phone to receive and fill orders for drugs. The phone contained conversations making deals for the drug buys.

### c.   The "Tina Lay" Package

On April 4, 2021, U.S. Postal Inspection Services ("USPIS") intercepted a package in the mail addressed to "Tina Lay." The Court issued a search warrant permitting the Inspectors to open the package. The "Tina Lay" package contained 926 net grams of methamphetamine hydrochloride with a purity level of 100%. The drug was wrapped in blue paper. The Court issued a tracking warrant and USPIS replaced the drug with a sham substance.

The "Tina Lay" package was delivered to a mailbox where it was picked up by a man riding a motorcycle. Law enforcement then tracked the "Tina Lay" package as it traveled in a 2012 Gray Dodge Charger driven by the Defendant to K.F's home at 129B Dairy Road, Mangilao. The package was breached. Law enforcement entered the residence.

The Defendant saw Law Enforcement outside of the Mangilao residence. Defendant climbed out of a window and ran away. Defendant left behind his black backpack, his cell phones, the "Tina Lay" package, and the parked 2012 Dodger Charger vehicle.

Resident K.F. stated that the Defendant came to his home and asked to use his bathroom. The Defendant asked K.F. to carry his backpack into the home. K.F. saw the Defendant carrying a blue packet, enter the bathroom, then exit the bathroom and climb out of a window before running away. K.F. consented to search of the residence.

The "Tina Lay" package was found in a bedroom. The sham (wrapped in a blue packet) was found in the toilet tank in the bathroom. The Defendant's black backpack held $24,075.00 in

U.S. SENTENCING
MEMORANDUM                              3

cash, plastic baggies, three scales, calibration weights, 821 net grams of methamphetamine hydrochloride with a 99% purity level, and a nasal spray bottle.

The 2012 Dodge Charger driven by the Defendant had plastic bags on the front seat. One plastic bag contained $56,000.00 in cash. The other plastic bag held $15,010.00 in cash. The Defendant had left his cellular phone in K.F.'s bedroom.

Law Enforcement obtained fingerprints from the contents of the 2012 Dodge Charger and D.N.A. from a nasal spray and a drink bottle. The Court issued a search warrant authorizing H.S.I. to collect a Buccal swab from NAPUTI.

The Federal Bureau of Investigations determined that the fingerprints and D.N.A. matched those of Defendant. The contents of the Defendant's cell phones were extracted revealing drug conversations.

All in all, the quantities of the methamphetamine attributed to the Defendant are as follows:

- April 20, 2023: 1,556 net grams of methamphetamine (seized from Toyota 4-Runner upon Defendant's arrest);
- April 4, 2021: 821 net grams of methamphetamine hydrochloride (seized from Defendant's backpack left at the K.F. residence);
- April 4, 2021: 926 grams of methamphetamine hydrochloride (seized from the "Tina Lay" package).

## II. PRESENCE INVESTIGATION REPORT

The Government adopted the Draft Presentence Investigation Report (ECF No. 79) on September 1, 2023. ECF No. 81. On September 5, 2023, NAPUTI filed a Response to Presentence Investigative Report requesting a variance. ECF No. 83. On September 11, 2023, The Government replied to the Defendant's filing. ECF No. 84.

## III. SENTENCING CALCULATIONS

The methamphetamine seized from the Defendant had different purity levels and different substances (cocaine, methamphetamine hydrochloride and d-methamphetamine hydrochloride).

U.S. SENTENCING
MEMORANDUM 4

Probation converted each of the drug's weights to obtain the total Drug Quantity Table.

The base offense level is 36. *See* U.S.S.G. § 2D1.1(a)(5)(c)(2). Because the Defendant possessed a firearm and ammunition, an increase of +2 is applicable. *See* U.S.S.G. § 2D1.1(b)(1). The Defendant was an organizer, leader, manager or supervisor, and +2 is added. *See* U.S.S.G. § 3B1.1(c). [1]

A reduction of -3 is applied for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a) and (b), and this reduces this calculation to 37. Defendant's final guideline range is thus adjusted offense level 37 and Defendant's Criminal History Category is VI, or 360 months to life imprisonment.

The Government recommends that the Court impose a sentence of 360 months imprisonment.

### IV. <u>SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)</u>

In *United States v. Booker*, the Supreme Court excised the provisions that made the Guidelines mandatory, and thus "made the Guidelines effectively advisory." *United States v. Booker*, 125 S.Ct. 738, 756-57 (2005). As modified, the Sentencing Reform Act now "requires a sentencing court to consider Guideline ranges, see 18 U.S.C. § 3553(a)(4), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." *Id*. at 757. Further, "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id*. at 767; *see* 18 U.S.C. § 3553(a)(4)(5). "[T]he Act nonetheless requires judges to impose sentences that reflect the seriousness of the offense, promote

---

[1] "Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense." U.S.S.G. § 3B1.1(c) Application Note #4.

U.S. SENTENCING
MEMORANDUM                                    5

respect for the law, provide just punishment, afford adequate deference, [and] protect the public...." *Booker*, 125 S.Ct. at 765; *see* 18 U.S.C. § 3553(a)(2). In *United States v. Zavala*, 443 F.3d 1165 (9th Cir. 2006), the Ninth Circuit reiterated that the Guidelines are the starting point for a district court in determining a reasonable sentence. *Id.* at 1169. A district court, however, must not accord more weight to the Guidelines than the other Section 3553(a) factors. *Id.* at 1171.

The Government addresses each of the Section 3553(a) factors as follows:

1. Nature and circumstances of the offense and the history and characteristics of the defendant:

Defendant has been involved in the long-term distribution of methamphetamine in Guam. Defendant was armed while he sold drugs. Defendant's reputation among his co-conspirators and drug customers is one of defiance, defiance of the law, defiance of law enforcement, and defiance of the Court.

The nature and circumstances of the Defendant's offenses have placed individuals and members of the community at great and prolonged risk. He has gifted members of our community with addiction, permanent brain damage in long-term drug users, financial harm, and even violence. The Defendant has met Guam's demand for methamphetamine. While meeting this demand, he has benefitted from Guam's increasing appetite for methamphetamine. These risks can be mitigated by a term of imprisonment of 30 years. This term of imprisonment is sufficient, but not greater than necessary. The Court must also remove any financial benefits he has obtained from dealing a dangerous substance in the community. These include removing his profit in the form of U.S. currency, phones, jewelry and vehicles as well as issuing a money judgment.

2. Need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense:

It is hoped that a sentence of thirty years, the low end of the guideline range, will impress

U.S. SENTENCING
MEMORANDUM                              6

on the Defendant the seriousness of his offenses and promote significant respect for the law.

3. <u>Need for sentence imposed to afford adequate deterrence to criminal conduct</u>:

Defendant has victimized numerous persons by his drug dealing. It is hoped that the conviction and sentence will deter the Defendant from committing additional crimes of this nature.

4. <u>Need for sentence imposed to protect the public from further crimes of the Defendant</u>:

The government expects that the proposed sentence will protect the public from further crimes committed by the Defendant.

5. <u>Need for sentence imposed to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in most effective manner</u>:

A sentence of 30 years, the low-end range of the guidelines, will provide the Defendant with the opportunity to obtain vocational, medical, or similar correctional treatment. While the Defendant has attained his GED in 2004, he can nevertheless avail himself of correctional treatment offered at the Bureau of Prisons. It is recommended that he be provided the opportunity to receive substance abuse treatment for his past use of methamphetamine and cocaine.

6. <u>The kinds of sentences available</u>:

The sentence range is for a Class A felony.

7. <u>The kinds of sentence and the sentence range established under the Guidelines</u>:

The proposed sentence is fair and reasonable given the Defendant's relevant conduct.

8. <u>Any pertinent policy statements issued by the Sentencing Commission</u>:

There are no pertinent policy statements in this case.

9. <u>The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct</u>:

The proposed sentence is consistent with that applicable to similarly situated defendants and will therefore not create disparities among defendants convicted of similar crimes.

U.S. SENTENCING
MEMORANDUM                    7

10. <u>Need to provide restitution to any victims of the offense</u>:

Restitution is not at issue in this case.

## V. __CONCLUSION__

For the foregoing reasons, the Defendant should be sentenced to a term of imprisonment of thirty (30) years, a sentence at the low-end range of the guidelines. The Government submits that such sentence is appropriate and reasonable given the applicable Guideline range and the factors set forth in 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED this 8th day of December, 2023.

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the NMI

By: */s/ Rosetta L. San Nicolas*
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney